## JONES v. SLAUGHTER.

WITNESSES; COMPETENCY; DEATH OF OPPOSING PARTY.

1. Under D. C. Code, sec. 1064 (31 Stat. at L. 1357, chap. 854), after the death of one of the parties to a contract, the other party is incompetent to testify, in a suit between the representatives of such deceased party and such other party, as to any transaction with, or declaration of, such deceased party.    (Citing *Mankey* v. *Willoughby*, 21 App. D. C. 314, 322; *Dawson* v. *Waggaman*, 23 App. D. C. 428, 434; Distinguishing *Tuohy* v. *Trail*, 19 App. D. C. 79.)

2. While services performed with the knowledge and approval of a person may form the basis of an action for the value of such services, yet such a circumstance   does not support a suit founded on a specific contract for a certain compensation, where such contract is not otherwise proved.

No. 1613.    Submitted May 21, 1906.    Decided June 5, 1906.

HEARING on an appeal by the claimants from a decree of the Supreme Court of the District of Columbia denying a claim to a part of a fund in the hands of a receiver.        *Affirmed.*

The facts are fully stated in the opinion.

*Mr. Henry E. Davis* for the appellants.

*Mr. A. S. Worthington, Mr. J. J. Darlington,* and *Mr. Wilton J. Lambert* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decree denying the claims of the appellants John Paul Jones and George Lines to a part of a fund in the hands of a receiver under the appointment of the court. A history of the origin of this litigation is important. It appears that provision was made in a convention, entered into between the United States and the Republic of Mexico, on July 4, 1868, for the adjustment of certain claims of citizens of either country against the other, through a mixed commission. Each of the contracting parties appointed a commissioner, and these were empowered to appoint an umpire in any case in which they might differ in opinion. Among the claims submitted to this "mixed claims commission," as it has been called, were one against Mexico by the La Abra Mining Company and another against the same country by Benjamin Weil.

The commissioners, having disagreed in opinion respecting the dispositions of these two claims, appointed as umpire, Sir Edward Thornton, the British Minister to the United States. The umpire made an award of $683,041.32 in favor of the La Abra Silver Mining Company, and $487,810.68 in favor of Weil. The final decisions of the umpire were published in the year 1876. After this publication Mexico discovered evidence, not before obtainable, sufficient to show that the two claims were fraudulent. James E. Slaughter, then a resident of Mobile, Alabama, apparently furnished the information which led Mexico to attempt to reopen the question of the validity of said claims.

Acting by authority of his government Don Ignacio Mariscal, the Minister of Mexico to the United States, entered into a contract with Slaughter on May 2, 1876, whereby, in consideration of his undertaking the proof and establishment of the fraudulent character of the claim of Weil against Mexico, the

government agreed, "immediately upon the final withdrawal or waiver by the proper authorities of the government of the United States, whether by treaty, executive order, or otherwise, of the whole or any portion of said claim, to pay to Slaughter a sum equal to one tenth of the portion of said claim" which may be so waived or finally withdrawn, or of the "whole amount if it be so waived or withdrawn."

A similar contract was entered into in respect of the La Abra company's claim.

It appears, also, that Slaughter afterwards entered into an agreement with one Samuel E. Loeb, who was in possession of certain books and documents necessary to prove the fraudulent character of the Weil claim, by which he undertook to pay Loeb two fifths of any money that he should collect from Mexico under the contract relating to the Weil claim. The La Abra claim was not included. It is conceded that Slaughter performed his contract with Senor Mariscal in each of the cases.

During the year 1877, Mexico made a statement to the Secretary of State of the United States of the fraudulent nature of the two claims, and asked their reinvestigation and the stoppage of payments to the claimants. Mexico, however, commenced and continued to pay over to the Secretary of State the sum awarded against her, in certain instalments as provided by the terms of the convention of 1868.

The then Secretary of State made inquiry into the representations made, and reported to Congress that the testimony submitted brought into grave doubt the integrity of the claims, but that, having no authority to institute a judicial proceeding for the purpose requested, he referred the matter to Congress for action. In 1878, Congress passed an act authorizing the Secretary to suspend the distribution of the funds, and to institute an investigation to ascertain the truth of the charges preferred by Mexico. A treaty was signed providing for the rehearing of the claims before an international tribunal. This treaty, several years after its submission to the Senate of the United States, failed to receive approval.

On December 28, 1892, an act was passed, authorizing and

directing the Attorney General to bring a suit or suits in the name of the United States, in the court of claims, against La Abra Silver Mining Company, its successors, assigns, and so forth, to determine whether the award to that company has been obtained by fraud effectuated by means of false swearing or other false and fraudulent practices; and, in case it be so determined, to bar and foreclose all claims in law or equity on the part of said company to the money, or any part thereof, received from the Republic of Mexico for or on account of such award. And in case of such determination the President of the United States was authorized to return to Mexico any money paid by her and remaining in the custody of the United States.

The suit authorized by this act was brought and the court of claims found that the whole sum awarded had been obtained by fraud effectuated by means of false swearing and other false and fraudulent practices, and adjudged that the La Abra company be forever barred and foreclosed in respect of the money received from the Republic of Mexico for or on account of the award. *United States* v. *La Abra Silver Min. Co.* 32 Ct. Cl. 462. This judgment or decree was affirmed, December 11, 1899, on appeal to the Supreme Court of the United States. 175 U. S. 423, 44 L. ed. 223, 20 Sup. Ct. Rep. 168.

A similar suit was instituted to bar and foreclose the claim under the award in favor of Weil, under a like statute. The court of claims rendered a like judgment in that case also. *United States* v. *Weil,* 35 Ct. Cl. 42. The defendant took an appeal, but failed to perfect the same, and it was docketed and dismissed in the Supreme Court of the United States during the October term, 1900.

Prior to the passage of the act of 1892, it appears that the United States paid from the money received from Mexico the sum of $240,083.06 to the La Abra company, and $171,889.64 to Weil and his assignees, making in all $412,572.70.

The money paid on account of those awards that remained in the custody of the United States was returned to the Republic of Mexico, under the authority of the act of 1892 after the rendition of the aforesaid decree.

Ten per cent of the amounts so returned was paid over to Slaughter under the contract with him before recited.

Immediately after the determination of the *La Abra Case,* Slaughter, and parties connected with him, set about procuring an act of Congress requiring payment to Mexico of the part of the La Abra award that had been paid to that company as above recited. After the final disposition of the Weil claim it was included in the effort to procure repayment. Bills were introduced in both Houses of Congress, favorable reports thereon obtained, and attempt made to incorporate the necessary provision for repayment in some of the appropriation bills. Finally, on February 14, 1902, the necessary appropriation was made.

In accordance with this authority, the Ambassador of Mexico, Don Manuel de Aspiroz, received a Treasury draft for the said sum of $412,572.70, covering the La Abra payment of $240,-683.06, and the Weil payment of $171,889.64.

Slaughter died in the city of Mexico, where he appears to have gone to attempt to induce the government of Mexico to increase the fees provided in his contract of 1877, on account of the unexpected difficulties, expenses, and delays in the performance of his obligations. His death occurred January 2, 1901. Youngblood, one of the parties to this proceeding, was appointed administrator of his estate by the probate court in Mobile, Alabama.

Having received the entire fund, the Ambassador recognized the contracts with Slaughter as extending thereto, and entitling him to one tenth of the same, which amounted to the sum of $41,257.00. This portion, recognized as payable to Slaughter, was claimed by the aforesaid administrator, and by two sets of persons claiming under an unprobated will, and as next of kin of Slaughter. The appellants Jones and Lines also laid claim to a portion of the fund, the grounds of which are hereafter stated. One Alfred T. Green also made a claim. Under proceedings for the probate of an alleged will of Slaughter in the District of Columbia, Charles L. Frailey had, in the meantime, been appointed collector of the estate, under the provisions of the probate law in force in said District.

The Ambassador was unwilling to assume the responsibility of determining the rights of the adverse claimants. To procure the appointment of a receiver to whom the payment could be safely made, the proceeding out of which this appeal grew was instituted.

On April 12, 1903, the proceeding was begun by a bill filed by Julian C. Slaughter, Olga E. Rogers, Roy L. E. Slaughter, Charles L. Frailey, as collector, and William Youngblood, as administrator under appointment of the Alabama court, against Daniel A. Slaughter, Edwin L. Slaughter, Eliza F. Slaughter, Carrie W. Slaughter, Mary Slaughter, Mamie S. Hamilton, Alfred T. Green, John Paul Jones, and George Lines.

This bill recites the Slaughter contract, the readiness of the Mexican Ambassador to pay over the sum of $41,257.00 as due Slaughter thereunder. It then alleges that Lines and Jones, and defendant Alfred T. Green, as assignee of one Alfred A. Green, claim parts of said fund under certain alleged agreements with Slaughter. It also alleges that there had been offered for probate in the District of Columbia an alleged will of said Slaughter, whereby he had bequeathed his entire estate to the complainants, except the said Frailey and Youngblood; and that, a *caveat* having been filed in said proceeding, said Frailey had been appointed collector of the estate pending the proceedings thereon. It is alleged that the defendants, other than Lines, Jones, and Green, claim as the next of kin of said Slaughter. It then recites the fact that the conflicting claims prevent the payment of the money, and alleges that it may be sent beyond the jurisdiction, unless a receiver be appointed.

On the same day, by consent of all the parties, a decree was entered appointing Charles A. Frailey receiver, and authorizing him to receive the fund, and to execute an instrument acquitting and discharging the Republic of Mexico from any liability on account of the claims of all of the parties.

The money was thereafter paid to the receiver and held to await the adjustment of the claims of the several parties.

On February 20, 1903, one Samuel E. Loeb filed a petition of intervention setting out a contract made with Slaughter Novem-

ber 2, 1894, under which he claims two fifths of the fund paid
over on account of the will fund.    He claimed no interest in the
La Abra fund.

On May 18, 1904, George Lines and John Paul Jones filed a
cross bill against all of the other parties, including said Loeb.
The pertinent allegations of this cross bill are the following:

"3. After the making of the certain agreement between the
said James E. Slaughter and the Republic of Mexico as in the
third paragraph of the said original bill of complaint set forth,
the cross-complainants, John Paul Jones and George Lines, were
retained and employed by the said Slaughter to co-operate with
and assist him, the said Slaughter, in the rendition of the services
provided and undertaken to be performed by the said Slaughter
under and in conformity with the said agreement, he, the said
Slaughter, covenanting and agreeing to pay to them, the
said Jones and Lines, an amount equal to one half of any and
all sum or sums of money which he, the said Slaughter, might
receive from the said Republic of Mexico for and on account of
services so as aforesaid to be rendered and performed by him
as aforesaid, in respect of securing a repayment by the United
States of America to the said Republic of Mexico of certain
sums of money received by the United States from the said Re-
public of Mexico on account of the certain awards in favor of
the La Abra Silver Mining Company and one Benjamin Weil,
and paid over by the said United States to the said company and
the said Weil, and their respective representatives and assigns,
amounting in the aggregate to the sum of $412,572.70.

"4. The cross-complainants, having accepted the retainer and
employment of the said Slaughter in the premises, undertook to
co-operate with and assist, and did co-operate with and assist,
the said Slaughter in the rendition of the services aforesaid up
to the time of the death of the said Slaughter, on, to wit, the
2d day of January, A. D. 1901, and thereafter continued to
render and perform the necessary services in respect of procur-
ing the repayment by the said United States to the said Re-
public of Mexico of the said sums aforesaid, with the result that
the said sums, in the aggregate aforesaid, were procured so to be

repaid, and the same were in fact, by virtue of an act of Congress of the said United States of the 14th day of February, A. D. 1902, repaid, to the said Republic of Mexico.

"5. By reason of the premises, there became justly due and payable by the said James E. Slaughter, or his legal representatives, to the cross-complainants, the sum of, to wit, $12,034.15, on account of the money so as aforesaid repaid upon the said award to the said La Abra Silver Mining Company, and the sum of $8,594.48, on account of the sum so as aforesaid repaid upon the said award to the said Weil."

Other paragraphs allege settlements so far as the La Abra fund is concerned, and that complainants have a lien upon the Weil fund in the hands of the receiver.

Answers denying the contract and the performance of services were filed, and testimony was taken.

The following general decree of distribution was entered by the court on June 30, 1905:

"This cause came on to be heard at this term upon the original bill and the petition of intervention filed by Samuel E. Loeb with the exhibits therein referred to, and the cross bill filed by John Paul Jones and George Lines, together with the answers of said petition and cross bill and the replication thereto, and the depositions and documentary evidence, and was argued by counsel, and the court, after due consideration had, being of the opinion that the intervenor, Samuel E. Loeb, is entitled under the contract between him and James E. Slaughter, deceased, dated the 2d day of November, 1894, to two fifths of the sum of seventeen thousand and one hundred and eighty-eight dollars and ninety-six cents ($17, 188.96) heretofore paid into the hands of Charles L. Frailey, the receiver in this cause, by the government of Mexico, through Senor Don Manuel de Aspiroz, the Ambassador of said government in the city of Washington, in behalf of the estate of James E. Slaughter, deceased, under and in fulfilment of the contract between Slaughter and Senor Don Ignacio Mariscal acting for and by authority of the said government of Mexico dated the 9th day of March( eighteen hundred and-seventy seven (1877), the said sum of $17,188.96 being 10 per cen-

tum of the amount of $171,889.64 appropriated by Congress on February 14, 1902 (32 Stat. at L. 5, chap. 17), to complete the reimbursement of the government of Mexico of the amount paid by it under the fraudulent award in favor of Benjamin Weil against said government, and the court being of opinion, further, that the said John Paul Jones and George Lines, complainants in said cross bill, have not established the alleged contract set up in said cross bill between the complainants therein and the said James E. Slaughter, deceased, nor a state of facts upon which an allowance can be made without contravening public policy, doth, therefore, this 30th day of June, 1905, order, adjudge, and decree:

"First. That Charles L. Frailey, the receiver, do pay out of the fund in his hands in this cause to Samuel E. Loeb, or his solicitor of record in this cause, the sum of six thousand eight hundred and seventy-five dollars and fifty-eight cents ($6,-875.58), with costs, and, as to so much in excess of said sum as is claimed by the said Loeb in his petition, the same is hereby disallowed as not within the contract of November 2d, 1894, and consequently no lien on the fund; and it is accordingly ordered and decreed that the said petition of intervention be dismissed as to said excess, but without prejudice to any other proceeding to recover the same.

"Second. That said receiver out of the said funds shall pay the costs of this suit and retain a commission on the amount received by him of 3 per cent less the amount of commissions retained by him under a former order of this court.

"Third. That the remainder of the fund in his hands as said receiver he shall divide into two equal parts, and shall pay one part, in equal shares, to Julian Castillo Slaughter, Olga Evans Rogers, W. J. Lambert, guardian of Roy L. Evans Slaughter, and D. W. Baker, guardian of Edward Evans Slaughter, or their respective solicitors of record, and the other half, in equal shares, to Daniel A. Slaughter, Edwin L. Slaughter, Eliza F. Slaughter, Carrie W. Slaughter, John W. Slaughter, Mary Slaughter, Mamie S. Hamilton, or their respective solicitors of record.

"Fourth. That the cross bill of said John Paul Jones and George Lines be, and the same hereby is, dismissed with costs."

Jones and Lines appealed from so much of this decree as denied their claims to the fund and dismissed their cross bill. Julian C. Slaughter, Olga E. Rogers, Roy L. E. Slaughter, Edward E. Slaughter, Daniel A. Slaughter, Edwin L. Slaughter, Eliza F. Slaughter, Carrie W. Slaughter, John W. Slaughter, Mary Slaughter, and Mamie S. Hamilton appealed from so much of the decree as directed payment of a part of the Weil fund to Loeb.

These appeals have been separately prosecuted, but were argued at the same time.

The question for determination in this appeal is the right of Jones and Lines to participate in the distribution.

The following contract was introduced in evidence by the said claimants:

This memorandum of agreement was made and entered into by and between James E. Slaughter of the city of Mobile in the State of Alabama, of the first part, and George Lines of the city of Milwaukee, in the State of Wisconsin, and John Paul Jones of Woodside in the State of Maryland (but doing business in the city of Washington in the District of Columbia) of the second part witnesseth:

Whereas: the said party of the first part is now in contractual relations with the Republic of Mexico under and by virtue of an instrument in writing executed by and between the said party of the first part and the said Republic of Mexico, acting through its duly accredited representative, on or about the — day of March, 1877, whereby it is provided, in effect, that the said party of the first part shall have and receive of the said Republic of Mexico an amount equal to ten (10) per centum of any and all sum or sums of money saved to the said Republic of Mexico through the labors of the party of the first part, in securing the revocation, annulment, or setting aside of a certain award in favor of La Abra Silver Mining Company, made December 27, 1875, in the sum of $683,041.32 by the umpire under the provi-

sions of the convention between the United States and the Republic of Mexico of July 28, 1868, and

Whereas: the Supreme Court of the United States did, on the 11th day of December, 1899, decide that said award was, as a whole, obtained by fraud and perjury; and

Whereas: there was, prior to the decision above referred to, in the hands of the Secretary of State of the United States, the sum of $403,030.08, paid by the Republic of Mexico for and on account of said award, and which said amount has since been repaid to the said Republic of Mexico; and

Whereas: in and prior to the year 1881 there had been paid out and distributed by the Secretary of State of the United States to La Abra Silver Mining Company, or its assignees, the sum of $280,011.24, which said sum had been paid at various times by the Republic of Mexico for and on account of said award; and

Whereas: there is now pending in the Congress of the United States a bill to refund to the Republic of Mexico the said sum of $280,011.24, so distributed as aforesaid, and

Whereas: the said party of the first part is desirous of securing the services and assistance of the said parties of the second part in and about the passage of said bill;

Now, therefore, it is hereby agreed by the parties to this instrument that the said party of the first part as heretofore retained and by these presents does retain and employ the said parties of the second part to assist in and about securing the passage of the said bill now pending in Congress, as aforesaid, and he hereby covenants and agrees to pay to them, the said parties of the second part, an amount equal to one half ($\frac{1}{2}$) of any and all sum or sums of money which he, the said party of the first part, may receive from the Republic of Mexico for and on account of services rendered, or to be rendered, in and about securing the passage of said bill, whether the same be received by said party of the first part under the contract or agreement entered into between him, the said party of the first part, and the Republic of Mexico, on the — day of March, 1877,

or under any other contrac⸱ or agreement heretofore, or hereafter to be, executed.

Provided, however, if the said party of the first part be compelled to pay out of the sum or sums to be received from the Republic of Mexico, for services rendered and to be rendered as hereinbefore set forth, any sum whatsoever to the heirs at law, or legal representatives of one Alfred A. Green, deceased, late of San Francisco, in the state of California, then, and in that event, each of the parties to this instrument hereby covenants and agrees that he will bear and pay his proportionate share of such amount; and it is further understood and agreed that in the division of any sum or sums of money which may be received from the Republic of Mexico for services as hereinbefore set forth, the said parties of the second part, *i. e.,* John Paul Jones and George Lines, shall share and share alike; *viz.* one fourth ($\frac{1}{4}$) of any such sum or sums to each; and

It is distinctly understood that, in the event of the death of either of the parties of the second part, the survivor and the party of the first part, shall continue their efforts and labors to secure the passage of said bill by the Congress of the United States, and the legal representatives of such deceased party shall take and have the share which would have gone to such deceased had he lived and performed his just and equitable proportion of such efforts and labors; and, in the event of the death of the party of the first part, the parties of the second part covenant and agree that they will endeavor to secure from the Republic of Mexico a contract or agreement, in all respects similar in purport to that now existing between the said party of the first part and said Republic of Mexico, or which may hereafter be entered into or executed, and, if they succeed in so doing, they, the said parties of the second part, will pay or cause to be paid to the legal representatives of the said party of the first part the full and entire amount which he would have received had he lived and performed his just and equitable proportion of the efforts and labors as contemplated by the tenor and intent of this instrument.

All expenses incurred in and about the subject-matter of this

agreement, excepting only traveling expenses, including board or hotel bills, shall be borne by each party to the instrument, in proportion as his interest may appear.

In witness whereof we have hereunto set our hands and seals, this 3d day of July, 1900.

James E. Slaughter.

Geo. Lines.

John Paul Jones.

In consideration of the great labor, time, and money expended by the party of the first part to the foregoing instrument, it is his earnest hope and confident expectation that, in the event of his death, the Republic of Mexico will enter into a new contract or agreement with the parties of the second part, and treat and deal with them as though he, the said party of the first part, were alive.

James E. Slaughter.

This contract had relation to the La Abra fund alone, and it appears that Lines and Jones have been settled with thereunder. The question involved respects their claim to an interest in the fund received from the Ambassador of Mexico on account of the Weil claim.

They did not claim to have a written contract with Slaughter regarding this fund, but undertook to prove an oral contract of a similar character to that relating to the La Abra fund.

The learned justice presiding in the equity court held the evidence insufficient to establish such a contract, and we concur in his opinion. The only direct evidence tending to show a contract with Slaughter for an interest in the Weil fund is found in the depositions of Jones and Lines, who testified on their own behalf. This was objected to before the examiner, and that objection was renewed on the hearing.

This evidence is clearly inadmissible under the provision of section 1064 of the Code [31 Stat. at L. 1357, chap. 854], which reads as follows: " If one of the original parties to a transaction or contract has, since the date thereof, died, or be-

come insane or otherwise incapable of testifying in relation thereto, the other party thereto shall not be allowed to testify as to any transaction with, or declaration or admission of, the said deceased or otherwise incapable party in any action between said other party or any person claiming under him and the executors, administrators, trustees, heirs, devisees, assignees, committee, or other person legally representing the deceased or otherwise incapable party, unless he be first called upon to testify in relation to said transaction or declaration or admission by the other party, or the opposite party first testify in relation to the same, or unless the transaction or contract was made or had with an agent of the said deceased or otherwise incapable party, and said agent testifies in relation thereto, or unless called to testify thereto by the court." See *Mankey* v. *Willoughby,* 21 App. D. C. 314, 322; *Dawson* v. *Waggaman,* 23 App. D. C. 428, 434. The case of *Tuohy* v. *Trail,* 19 App. D. C. 79, relied on by the appellants, does not involve the question here presented.

The competent testimony shows that the bill for repayment of the La Abra fund had been presented before the ending of the Weil litigation, and was being prosecuted by Jones and Lines and Slaughter. The first bill for the repayment of the Weil fund was introduced later by Senator Proctor, at whose suggestion or request does not appear; it was not done, however, on the suggestion or request of either Lines or Jones. The United States were under the same moral obligation to refund to Mexico the money in each case, and they were naturally joined together when the final appropriation was made.

The testimony shows conclusively that Jones and Lines prosecuted both demands, during the interval between original presentation and allowance, with the knowledge and approval of Slaughter. While this might form the basis by them of a claim for the value of their services, it does not establish the specific contract for a certain compensation, on which their cross bill is founded.

This renders it unnecessary to determine whether the evidence shows the services actually rendered in the prosecution of

the claim before Congress were such as are usually called lobbying services, for which no action will lie.

We are of the opinion that the decree denying appellants' right to recover, and dismissing their cross bill, was right; it is therefore affirmed with costs.                    *Affirmed.*